# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SHAVONTAE DANIELS,

          Plaintiff,

v.                                             Case No. 18-CV-452

JOSEPH BEAHM, ANDREW POHL,
TAMMY WESTPHAL,
and CHRYSTAL MARCHANT,

          Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Shavontae Daniels is a Wisconsin state prisoner who is representing himself. He filed this case against the defendants, alleging they violated his Eighth Amendment rights when his medication went missing. The case is before the court on referral for pretrial management from the Honorable Lynn Adelman. Both the defendants and Daniels have filed motions for summary judgment. For the reasons that follow, the court recommends that Judge Adelman grant the defendants' motion for summary judgment and deny Daniels's motion.[1]

---

[1] The court notes that Daniels's motion was untimely under the scheduling order. All dispositive motions were due May 20, 2019. (ECF No. 28.) Daniels filed his motion along with his response to the defendants' motion on May 29, 2019. The defendants argue that his motion should be denied for this reason alone. The court agrees it could be denied as untimely, but the court accepts Daniels's motion and proceeds to the merits.

*1. Relevant Facts*

The following facts are taken from both the defendants' and Daniels's proposed findings of fact. Having said that, the court will only consider undisputed facts properly supported by admissible evidence and will consider a fact disputed only if that dispute is supported by admissible evidence.

1.1 Parties

Daniels is, and has been at all times relevant, an inmate at Waupun Correctional Institution. (ECF No. 48, ¶ 1.) Defendants Joseph Beahm, Andrew Pohl, Chrystal Marchant, and Tammy Westphal are employed by the Wisconsin Department of Corrections. (*Id.,* ¶¶ 2, 4, 7, and 8.) Beahm was a Correctional Sergeant at the time of the incident underlying this lawsuit (*id.*, ¶ 2), and Pohl was employed as a Correctional Officer (*id.,* ¶ 4). Marchant worked as the Health Services Manager in the Health Services Unit (HSU) (*id.*, ¶ 7), and Westphal was employed as a Licensed Practical Nurse (*id.*, ¶ 8).

On December 29, 2017, the date of the incident, Beahm and Pohl both worked first shift—Beahm as Sergeant in the Restrictive Housing Unit (RHU) and Pohl as a Correctional Officer in the RHU on the lower A–range, where Daniels was housed. (ECF No. 48, ¶¶ 3, 5.) Westphal was off work that day. (*Id.*, ¶ 56.)

1.2 Medication Delivery Process

Inmates in the RHU are delivered their controlled medication directly to their cell during medication pass time. (ECF No. 48, ¶ 11.) The controlled medications come in a blister pack. (*Id.*) Each housing unit within the RHU has a locked medication

2

cart on which the medications for all of the inmates housed on that range are stored. (*Id.,* ¶ 12.) Typically, the officer assigned to the range and HSU staff will have a key to the medication cart, and a master key is kept in the Control Center that opens all medication carts. (*Id.*, ¶ 13.) All HSU staff have access to the keys to the medication carts. (*Id.*, ¶ 38.) As the sergeant, Beahm does not carry a medication cart key on him unless he needs access to a medication cart. (*Id.*, ¶ 14.) In that case, he would retrieve the master medication cart key from the Control Center and return it after use. (*Id.*)

In 2017, at the time of this incident, Waupun used paper medication administration records. (ECF No. 48, ¶ 15.) HSU staff were responsible for filling out an administration record for each inmate, listing the names of the inmate's prescribed medication(s), the dose of the medication(s), and the time of the medication(s). (*Id.*) HSU staff would then place an inmate's medication onto the designated medication cart for the inmate's assigned housing range. (*Id.*, ¶ 16.)

During medication pass, pursuant to his normal procedure, Pohl would stop with the medication cart at each inmate's cell who received medication, check the inmate's medication administration record, pull out the corresponding blister pack of medication, have the inmate verify it as his medication, and dispense the medication into the inmate's hand or a cup. (ECF No. 48, ¶ 17.) Once Pohl dispensed an inmate's medication, it was his normal practice to put the blister pack back in the medication cart under the inmate's name and cell number. (*Id.*, ¶ 18.) There would be no reason for Pohl to remove an inmate's medication from the cart other than to dispense it to

3

the inmate. (*Id.*, ¶ 19.) After completing medication pass, Pohl would push the medication cart off the range and ensure it was locked. (*Id.*, ¶ 21.)

In the event there was an issue with an inmate's prescribed medication, Pohl would pull the blister pack from the medication cart and give it to HSU staff. (ECF No. 48, ¶ 20.) HSU staff would then be responsible for addressing the issue and returning the medication to the medication cart. (*Id.*)

1.3 Medication Ordering Process

The medication ordering process at Waupun is a four-step process. (ECF No. 48, ¶ 22.) At the first step, an advanced care provider—a physician, physician's assistant, or advanced practice nurse practitioner—approves the order and records it in the Prescriber's Orders portion of the inmate's medical records. (*Id.*, ¶ 23.) At step two, a nurse reviews the advanced care provider's order as recorded in the Prescriber's Order and writes the medication order on the inmate's Medication Profile. (*Id.*, ¶ 24.) The Medication Profile is a document maintained in the inmate's medical records that shows the original order date, drug name, dosage, frequency, and prescriber for each medication an inmate has been prescribed. (*Id.*, ¶ 25.) It also has columns to show when a medication is filled/ordered and the stop/reorder date. (*Id.*) After the nurse has written the order on the inmate's Medication Profile, the nurse places a "check mark" and his/her initials in the checked by/date column on the inmate's Prescriber's Orders in his medical record. (*Id.*, ¶ 26.)

At the third step, a copy of the Prescriber's Order[2] is sent to the medication room. (ECF No. 48, ¶ 27.) This is the first time anyone in the medication room becomes aware that an advanced care provider has ordered a medication. (*Id.*) Finally, the last step in the process is when a copy of the Prescriber's Orders is sent over to the Central Pharmacy for processing. (*Id.*, ¶ 28.) HSU then must wait for Central Pharmacy to fill the order and send the medication to the institution. (*Id.*) It typically takes between seven and ten days for medications to arrive at the institution, though sometimes the wait is shorter. (*Id.*, ¶ 29.) If a medication is needed immediately, the advanced care provider must request that it be "Next Day" on the Prescriber's Orders. (*Id.*, ¶ 30.)

Inmates are told that medications typically take seven to ten days to be delivered to them. (ECF No. 48, ¶ 31.) Inmates are instructed to contact HSU if they do not receive their medications within seven to ten days. (*Id.*, ¶ 32.) They can do so by filling out a Health Service Request, filling out an Interview/Information Request, and/or contacting security officers on their housing units. (*Id.*) It is the inmate's responsibility to follow up with HSU if he does not timely receive his medication. (*Id.*, ¶ 33.)

Once medications are received from Central Pharmacy, they are checked into the medication room at Waupun by licensed staff—a Registered Nurse or a Licensed

---

[2] The defendants refer to this document as "Physician's Orders" in paragraphs 27 and 28 of their proposed findings of fact. They switch back to "Prescriber's Orders" in paragraph 30. The court understands them to be referring to "Prescriber's Orders" in all instances.

5

Practical Nurse. (ECF No. 48, ¶ 34.) When there is a new order or an inmate is almost out of an existing medication, licensed nursing staff bring the medication to the inmate's housing unit and place the medication on the correct medication cart. (*Id.*, ¶ 35.) Correctional Officers then distribute medication to inmates at prescribed medication times using the medication cart. (*Id.*, ¶ 36.)

1.4 Daniels's Bupropion Medication

On November 27, 2017, a new Prescriber's Order was written for Daniels to take Bupropion XL[3] 150 mg once per day for two weeks and then 150 mg twice daily (a.m./p.m.) for six months. (ECF No. 48, ¶ 39.) Nursing staff documented the new order on Daniels's Medication Profile on November 28, 2017. (*Id.*, ¶ 40.) HSU received a 14-count of Bupropion XL on December 15, 2017, and Daniels started the once daily dose the same day. (*Id.*, ¶ 41.) Daniels's last daily dose of the 14-count order would have been taken December 28, 2017. (*Id.*, ¶ 42.) The twice daily dose should have started on December 29, 2017. (*Id.*, ¶ 44.) Daniels's Medication Profile shows a 60-count of Bupropion XL was received on December 28, 2017. (*Id.*, ¶ 43.) Nurse Ann York (not a defendant) placed Daniels's medication on the medication cart. (ECF No. 57, ¶ 4.)

Pohl dispensed Daniels's a.m. dose of Bupropion XL on December 29, 2017. (ECF No. 48, ¶ 45.) Daniels was also taking Trazodone, Amitriptyline, Prazosin, and

---

[3] Neither party states what condition Bupropion is intended to address. But the court has learned that Bupropion is an antidepressant medication used to treat major depressive disorder and seasonal affective disorder. https://www.drugs.com/bupropion.html (last visited Feb. 8, 2020).

6

Topiramate. (ECF No. 57, ¶¶ 13, 15.) Pohl made no notation on Daniels's medication administration record of an issue with Daniels's medication, meaning Pohl would have followed his normal practice of returning Daniels's blister pack of medication to the medication cart after dispensing it. (ECF No. 48, ¶ 47.) Pohl was not working in the RHU during the p.m. medication pass, so he would not have delivered Daniels his p.m. medications. (*Id.*, ¶ 46.) However, Daniels has declared that he talked to Pohl during the noon medication pass about when he was supposed to receive his next dose and Pohl was unable to locate Daniels's Bupropion at that time. (ECF No. 57, ¶ 2.)

Officer Schultz-Phalin (not a defendant) passed out the p.m. medication on Daniels's housing range on December 29, 2017, at approximately 4:35 p.m. and could not find Daniels's Bupropion XL on the medication cart. (ECF No. 48, ¶ 48.) Staff searched the medication cart and the RHU's bubble but were unable to locate or recover the medication. (*Id.*, ¶ 49.) Daniels's Bupropion XL was not available until the new refill arrived on January 4, 2018, at which time Daniels received his p.m. dose. (*Id.*, ¶ 51.) Marchant does not recall if she was personally notified about Daniels's missing medication on December 29, 2017. (*Id.*, ¶ 52.) However, Central Pharmacy was contacted, and a new card of Bupropion XL was received on January 4, 2018. (*Id.*) December 29, 2017, was the start of a holiday weekend, and Central Pharmacy is closed on holidays. (*Id.*, ¶ 53.)

Nurse York completed a Medication Occurrence Report on December 30, 2017, reporting the missing medication. (ECF No. 48, ¶ 55.) A review of that document shows that York originally dated it "12-29" and then scratched that out and wrote "1-

7

2-17" (the 2017 undoubtedly intended to be 2018). (ECF No. 49-3, at 1.) It also reflects that the Health Services Manager signed the Report on January 2, 2018, and that the pharmacist was also notified on January 2, 2018. (*Id.*)

Daniels filled out a Health Service Request on January 2, 2018, concerning the fact that his medication was stolen and requesting that an incident report be filled out. (ECF No. 48, ¶ 58.) He did not report that he was experiencing any symptoms or side effects from the absence of the Bupropion. (*Id.*) A progress note dated that same day indicated that Daniels was eating and appeared "stable and in no distress." (*Id.*, ¶ 59.)

2. *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute of "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

8

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

3. *Analysis*

Daniels has been permitted to proceed against the defendants under the Eighth Amendment. He is proceeding against Pohl and Beahm on a deliberate indifference claim for allegedly stealing his medication. He is proceeding against Westphal and Marchant for acting with deliberate indifference by delaying the order of his replacement medication.

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). This standard contains both an objective element—that the medical needs be sufficiently serious—and a subjective element—that the officials act with a sufficiently culpable state of mind. *Id.* To survive summary judgment, a plaintiff must set forth enough evidence that a jury could reasonably conclude that he has proven each element of the standard. The defendants do not appear to contest that Daniels had a serious medical need. The only question is whether any of them were deliberately indifferent to Daniels's serious medical need.

3.1 Pohl and Beahm

As noted above, Daniels is proceeding against Pohl and Beahm for allegedly stealing his Bupropion XL. Liability in § 1983 cases is predicated on personal responsibility or involvement. *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). Daniels's evidence that Pohl and Beahm are responsible for his missing medication is: (1) the medication was present during the December 29 morning medication pass; (2) the medication went missing (either before the noon medication pass or the evening medication pass); and (3) only certain people had access to the medication cart.

But, as the defendants have established, Pohl and Beahm were not the only persons with access to the medication cart and Daniels's medication. HSU had access to a key, and a master key to all the medication carts was kept in the Control Center. So while Daniels can establish that his Bupropion was on the medication cart the morning of December 29 and that it subsequently went missing, he cannot establish that Pohl and Beahm were responsible for its disappearance. Based on the undisputed facts, any number of staff members could have walked into the Control Center and taken the key, or any HSU member could have used that Unit's key.

Pohl and Beahm have declared under penalty of perjury that they did not steal Daniels's medication. (ECF No. 50 ¶ 15; ECF No. 51 ¶ 8.) Though their statements are self-serving, they are based on personal knowledge and are admissible at summary judgment. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004). Daniels's speculation that Pohl and Beahm must have taken his medication is not

enough to defeat summary judgment when there is no other evidence on which a jury could base a finding that they were responsible for stealing his medication. *Sybron Transition Corp. v. Security Ins. Co.*, 107 F.3d 1250, 1255 (7th Cir. 1997) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion.").

It is not the defendants' burden to figure out what happened to Daniels's medication to be entitled to summary judgment (or to defeat Daniels's motion for summary judgment). There is no evidence upon which a reasonable jury could base a finding that Pohl and Beahm are responsible for the disappearance of Daniels's medication. As such, the court recommends that summary judgment be granted in favor of Pohl and Beahm.

3.2 Westphal and Marchant

Daniels is proceeding against Westphal and Marchant for being deliberately indifferent to his medical needs by causing a delay in the receipt of his medication refill. Plaintiffs alleging a deliberate indifference claim based on a delay (rather than a denial) of medical care must produce evidence that the delay caused harm. *Jackson v. Pollion*, 733 F.3d 789, 790 (7th Cir. 2013).

Westphal and Marchant argue that Daniels's claim cannot survive summary judgment because neither of them was responsible for any delay in reordering Daniels's medication. Any delay, to the extent there was one, was due to the fact the Central Pharmacy was closed for a holiday weekend.

Daniels points outs that it is unclear when York signed the Medication Occurrence Report—whether it was on December 29 or on January 2. It appears York may have filled it out on December 29 but that the form was not signed by a supervisor until January 2. Regardless, the form does indicate that the pharmacist was not informed about the missing medication until January 2, 2018. Construing the facts in Daniels's favor, then, a new medication order was put in on January 2, 2018. This, he argues, constitutes a delay in re-ordering his medication.

Daniels's medication went missing on December 29, 2017. The court takes judicial notice that that was a Friday. *See Wisconsin ex rel. Toliver v. McCaughtry*, 72 F. Supp. 2d 960, 968 n.6 (E.D. Wis. 1999). That means that the following Monday was January 1, 2018, a holiday. The Central Pharmacy was closed for the holiday weekend, including Monday the 1st, and reopened on January 2, 2018. (ECF No. 48, ¶ 53; ECF No. 49, ¶ 13.) That is, the first day the pharmacy was open after Daniels's medication went missing was January 2, 2018 (*see id.*)—the same day the pharmacist was informed. Even assuming someone knew about Daniels's missing medication earlier in the day on December 29 and should have put the order in before the evening medication pass, the record demonstrates that the pharmacy would be closed the next three days (and not filling orders) and that the medication would take seven to ten days to receive.

The record does not demonstrate that Westphal or Marchant was responsible for any delay in re-ordering Daniels's medication. Even a finding that the pharmacist was not informed until January 2, 2018, does not change the fact that that was the

first day the pharmacy was open following Daniels's medication going missing. Daniels has not, and cannot, defeat summary judgment on his claim that Westphal and/or Marchant was responsible for a delay in re-ordering Daniels's medication.[4] The court therefore recommends that summary judgment be granted in favor of Westphal and Marchant.

*4. Conclusion*

**NOW, THEREFORE, IT IS RECOMMENDED** that the defendants' motion for summary judgment (Docket # 46) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the plaintiff's motion for summary judgment (Docket # 56) be **DENIED**.

**IT IS ALSO RECOMMENDED** that this case be **DISMISSED** with prejudice.

The parties' attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

---

[4] The court also notes that Westphal was not working from December 23, 2017 through January 1, 2018. She was not present when Daniels's medication went missing, and she could not have taken any action until she returned on January 2, 2018. The defendants' argument that she is not liable for any delay is predicated on a finding that Daniels's medication was reordered on December 29, 2017. But, as the court has explained, even if the medication was not ordered until January 2, 2018, there was no delay. The court would recommend summary judgment be granted in Westphal's favor regardless of when the medication was reordered.

13

Dated at Milwaukee, Wisconsin this 10th day of February, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge